FILED

2006 May-11  AM 09:19
U.S. DISTRICT COURT
N.D. OF ALABAMA


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PHILIP MIXON,                            ]
                                         ]
                                         ]
    Plaintiff(s),                ]
                                         ]
    vs.                          ] CV-04-CO-3048-S
                                         ]
PIKE ELECTRIC, INC.,                     ]
                                         ]
                                         ]
    Defendant(s).                ]

MEMORANDUM OF OPINION

The plaintiff in this action, Phillip Mixon, is an African-American male who claims defendant Pike Electric, Inc., ("Pike Electric") terminated him on March 5, 2003, from his employment as a Class-A (Overhead) Lineman because of his race and in retaliation for his previous complaint of co-employee racial harassment, in violation of 42 U.S.C. § 1981.  Mixon has also asserted state law tort claims for  negligence and wantonness in the hiring, retention, and supervision of Pike Electric's employees, and claims for

suppression and outrage.[1]   The cause is presently before the Court for consideration of Pike Electric's "Motion for Summary Judgment." (Doc. 40.) Pike Electric also filed a "Motion to Strike." (Doc. 66.)  The motions are ripe for consideration.

I.      Standard of Review.

        Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting

---

[1]Mixon's claims under 42 U.S.C. § 1983 have previously been dismissed.  Orders of October 22 and 30, 2004.  Mixon voluntarily dismissed his claims against Alabama Power Company (Doc. 33).   In his brief in response to Defendant's Motion for Summary Judgment, Mixon did not point to any evidence supporting his state law claims, or otherwise respond to Defendant's argument that the state law claims are either time-barred or otherwise due to be dismissed.   Upon review, the motion for summary judgment will be granted as to the state law claims.  (Doc. 58.)

evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II.     Discussion.

Mixon has worked in various capacities for Pike Electric since March

1994.[2]  Pike Electric is an electrical contractor based in Mount Airy, North

Carolina, which operates in approximately 19 states.  Mixon worked in many

of those states on "storm duty" for Pike Electric.  Although Mixon normally

worked four 10-hour days, while on storm duty, he typically worked 16 to

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, the parties'
Joint Status Report, and the Court's own examination of the evidentiary record.  All
reasonable doubts about the facts have been resolved in favor of the nonmoving party.
See *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).
These are the "facts" for summary judgment purposes only.  They may not be the actual
facts.  See *Cox v. Adm'r U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th
Cir. 1994), *modified on other grounds,* 30 F.3d 1347 (1994).

        In ruling on this summary judgment motion, the Court found that the agreed facts
in the Joint Status Report were most pertinent to the issues raised in the motion, and
the disputes of fact argued in the parties' opposing statements of fact presented for
summary judgment proceedings were largely immaterial to the actual issues presented
in the summary judgment motion.  For instance, there was no dispute of fact about the
period of time that elapsed between Mixon's complaint about the hangman's noose and
his termination.    On the other hand, the disputes about the allegedly hostile
environment at Pike Electric, and the admissibility of evidence proffered to establish the
existence of a hostile environment, were immaterial to the question of whether Plaintiff
had ever asserted a hostile environment claim prior to the summary judgment
proceedings.  Accordingly, the Court has elected to reserve ruling on Defendant's Motion
to Strike pending consideration of this motion.  Any questions of admissibility of evidence
will be considered only to the extent the evidence is pertinent to an issue raised in the
underlying summary judgment motion.

18-hour shifts, seven days a week.  Mixon was promoted to Class-A Lineman in 1997 or 1998, which qualified him to work on energized lines.

On October 23, 2002, Mixon was working with a crew in Montgomery, Alabama, replacing underground power lines.  When Mixon came out of a manhole at the job site, he saw what looked like two hangman's nooses hanging on the barricade around the manhole.  When Mixon complained, the white supervisor, Walden, provided his camera so that Mixon could take pictures and then Walden immediately made another employee remove the knotted rope.  Mixon testified, "[Walden] was not going to tolerate that on his job.  The next person that was involved in any type of activity like that would be fired."  (Doc. 39 at 5 (citing Mixon Dep. at p. 195).)

On March 5, 2003, Mixon had been working about a week with a Pike Electric crew on an ice storm problem in Kentucky.   Walden was the foreman of the crew.  When Walden ordered Mixon to climb a pole and attach some lines, Mixon refused.  Mixon testified he was the only Class A Lineman on that crew, and the only one authorized to climb the pole.  Because of Mixon's refusal, Walden was required to locate a Class A Lineman from a different crew.  Walden contacted Donnie Crowder, Pike Electric

Superintendent, and Crowder responded that Mixon's refusal was considered a voluntary quit.  Walden drove Mixon back to his vehicle.

That same day, Crowder, who had hired Mixon in 1994, told Mixon he would find another job for Mixon in Pike Electric.  Approximately two weeks later, Crowder telephoned Mixon to offer him a B-Class Lineman position in Montgomery, Alabama, but Mixon declined because he did not want to take the $9.00 cut in pay.  Crowder telephoned Mixon a couple of weeks later and offered Mixon his prior salary and position as an A-Class Lineman on a job in Naples, Florida, but Mixon was not interested in relocating.  Mixon was out of work until October 2003, when he began employment with Sumter Utilities, doing the same job he had at Pike Electric.  He testified the reason for his gap in employment was because he took some time off during his father's terminal illness.

A.    Hostile Environment.

In response to Pike Electric's motion for summary judgment, Mixon contends he stated an additional Section 1981 claim for discriminatory hostile environment in Paragraphs 19–22 of his Complaint.

Paragraphs 19–22 of the Complaint, wherein Mixon averred he was subjected to different terms and conditions of employment, heard inappropriate remarks about African-American employees, saw a hangman's noose on October 23, 2002, and was terminated because of his race, does not give notice of a hostile environment claim.  After these and other factual averments, Mixon clearly stated his claims in seven counts.  Count One, Paragraphs 23-29, is a claim for disparate treatment race discrimination; Count Two, Paragraphs 30–38, is a retaliation claim; Count Three, Paragraphs 39-42, is a claim for negligence and wantonness in hiring; Count Four, Paragraphs 43-46, is a claim for negligence and wantonness in retention; Count Five, Paragraphs 47-50, is a claim for negligence and wantonness in supervision and monitoring; Count Six, Paragraphs 51-57, is a claim for suppression and concealment; Count Seven, Paragraphs 58-62, is a claim for Outrage and Intentional Infliction of Emotional Distress.  In view of these specifically stated claims, Mixon's contention that Defendant should have inferred a hostile environment claim from his general factual averments is untenable.

Further, the Court specifically ordered the parties to submit a Joint Status Report, requiring each party to set out their claims, including "each legal theory relied upon and the factual allegations [plaintiff] expects to prove in support of each legal theory. . . ." (Doc. 14.)  In the Joint Status Report filed on November 17, 2005, in response to this Order, Mixon stated that he was asserting claims of race discrimination and retaliation under Section 1981;  negligent hiring, retention, and supervision claims; an outrage claim; and a fraudulent suppression/concealment claim.  He did not mention a hostile environment claim.  (Doc. 39.)

A plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.  *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312 (11th Cir. 2004).  The plaintiff has not asserted a hostile environment claim in this action, and it is far too late to make this claim now.

B.     Section 1981 Disparate Treatment.

In a Section 1981 case, the plaintiff bears the burden of proving that the employer intentionally discriminated against him because of his race. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975); *Cooper*

*v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004).  To establish a prima facie case of intentional discrimination using circumstantial evidence, a plaintiff may use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Cooper*, 390 F.3d at 723-24.  In a discriminatory disciplinary action, the plaintiff must show:  "(1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged in misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority employees (that is, persons outside the protected class) received more favorable treatment."  *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *modified on different grounds and rehearing denied*, 151 F.3d 1321 (1998), *rehearing en banc denied*, 162 F.3d 1175 (1998).[3]  When the employer proffers a nondiscriminatory reason for the adverse employment action, the burden shifts to the plaintiff to prove the explanation is pretextual.  *McDonnell Douglas Corp.*, 411 U.S. at 804.  To demonstrate pretext, a plaintiff must show "not merely that the defendant's employment decisions were mistaken

---

[3]Mixon does not dispute Pike Electric's claim that his replacement was Gussie Johnson, who is also African-American.

but that they were in fact motivated by [race]." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000), *cert. denied* 532 U.S. 958 (2001).

Pike Electric contends it is entitled to summary judgment as to Mixon's disparate treatment claim because Mixon has no evidence that a similarly situated Pike Electric Lineman was treated better after refusing a direct order to climb a pole during storm work.[4]  Alternatively, Pike Electric argues that Mixon cannot show the proffered reason for his termination, his refusal to climb a pole during storm trouble work, is a pretext for discrimination.

      1.    Comparators.

Mixon identified four comparators, Robert Green, Tim Keller, and two employees named Brian and Scott.  (Doc. 58 at 16-18; Doc. 44 at 116-41.) Comparators need not be identically situated, but they must be similarly situated in all relevant respects.  *Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of

---

[4]For this summary judgment motion, Pike Electric does not dispute Mixon's claim that he was terminated, although it considers his refusal to climb the pole a "voluntary quit."

the same or similar conduct and are disciplined in different ways." *Holifield*

*v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)(internal quotations and

citations omitted).  "The most important factors in the disciplinary context

are the nature of the offenses committed and the nature of the punishments

imposed." *Id*.  Mixon testified that the four men he identified were lineman

who refused orders to climb poles during storm duty.

Pike Electric argues that Tim Keller is not a proper comparator

because he is a Class-A Underground Lineman, rather than a Class-A

Overhead Lineman like Mixon.  Although a  difference in job titles alone is

not conclusive, *Lathem v. Dep't of Children and Youth Servs*., 172 F.3d 786,

793 (11th Cir.1999), Pike also showed that Class A Underground Linemen

work on dead lines and do not have the specialized skill of working on

overhead, energized lines.  Therefore, Keller's refusal to climb a pole to

work on energized lines was not comparable to Mixon's refusal, since Keller

was not trained to work on the overhead lines.[5]  Further, Pike points out

---

[5]Mixon submitted his statement that Keller was a Class A Underground Lineman
and a Class B Overhead Lineman at the time he refused the work.  However, he testified
that only Class A Overhead Lineman, like Mixon, are expected to work on overhead lines
without supervision.

that, like Mixon, Keller was given the option of taking a different Pike Electric position in another state.  Mixon Dep. at 139-40.

Pike argues that "Brian," "Scott," and Robert Green, are not proper comparators because they were working on crews with different supervisors when they refused to climb.  Although a difference in the supervisors who impose discipline is relevant, it is not conclusive when the issue is similarity of comparators' situations and treatment.  *Anderson v. WBMG-42*, 253 F.3d 561, 565-66 (11th Cir. 2001) (discussing *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989);  *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306 (11th Cir. 1998), *opinion modified* by 151 F.3d 1321 (1998)).  At this summary judgment stage of the proceedings, the Court cannot say that "Brian," "Scott," or Robert Green are insufficient as comparators merely because they worked under different supervisors.

2. Pretext.

Pike argues it is entitled to summary judgment on Mixon's disparate treatment claim because it has proffered a legitimate, non-discriminatory reason for its decision to terminate Mixon:  Mixon's refusal to perform his assigned task during storm duty.  To bolster its argument, Pike also points

to evidence that the person who terminated Mixon, Donnie Crowder, is the person who hired and repeatedly promoted Mixon.

When the employer proffers a nondiscriminatory reason for the adverse employment action, the burden shifts to the plaintiff to prove the explanation is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804. To demonstrate pretext, a plaintiff must show "not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race]." *Lee*, 226 F.3d at 1253. At the summary judgment stage, the inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remain un-rebutted. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (quoting *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir. 1989)).

In response to Pike's argument, Mixon points to his testimony that other white Pike employees were not terminated for similar transgressions, and argues that there is no evidence in the record of any white employee

who was terminated for refusing to climb a pole.[6]   Mixon also submitted the

Pike Electric employee handbook, which advises employees to notify their

supervisor when working conditions are unsafe.  Based on the present record,

a reasonable fact finder could conclude that Pike's reason for terminating

Mixon was pretextual.[7]  Accordingly, summary judgment must be denied.

     C.    Section 1981 Retaliation.

     Pike Electric contends it is entitled to judgment in its favor on the

Section 1981 retaliation claim, because there is no evidence of a causal

---

[6]The Court has not considered Mixon's Exhibit DD (Doc.  60), which he cited as support for claims that Mr.  Crowder was biased and that another Pike employee was killed while performing a similar task.  Exhibit DD is a brief filed by counsel for Louisville Gas and Electric in an Alabama civil case in which Pike was a co-defendant; as it stands, it is not competent evidence.  Pike's Motion to Strike (Doc.  66) will be granted as to Plaintiff's Exhibit DD.  However, the remainder of Pike's Motion to Strike seeks exclusion of evidence which has proved to be irrelevant to the motion for summary judgment. Accordingly, the remainder of the  Motion to Strike is moot.

Plaintiff filed a response to the Motion to Strike (Doc. 67), which he later sought to "strike" or withdraw, and substitute new materials. (Docs. 68, 69.)  Although most of the disputed evidence was irrelevant to the summary judgment motion, in the interests of maintaining a clear record, the Court finds that Document 67 was withdrawn, Document 68 is moot, and Document 69 is due to be granted and included in the record as Plaintiff's response to the Motion to Strike.

[7]Although Mixon testified Keller was transferred to Georgia after refusing to climb a pole, he did not testify Keller was terminated and offered an equivalent job a month later.  Pike has not pointed to any evidence of other employees who were terminated for refusing to climb a pole to rebut Mixon's testimony that four white employees received different treatment in similar circumstances.

connection between Mixon's October 23, 2002, complaint of co-employee racial harassment and his removal from his position on March 5, 2003.  Pike does not argue with Mixon's assertion that Walden was the decision-maker with regard to his termination, but contends that there is no evidence of a causal connection between Walden's decision to terminate Mixon and Mixon's complaint to Walden of co-employee harassment four months earlier.

To establish a prima facie case of retaliation under Title VII, a plaintiff must prove:  (1) participation in a protected activity;  (2) an adverse employment action;  and (3) a causal connection between the participation in the protected activity and the adverse employment decision.  *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999).  To establish a causal connection, the plaintiff must show that the decision-maker was aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated.  *Farley*, 197 F.3d at 1337 (citations, internal marks, and emphasis omitted).  For purposes of a prima facie case, "close temporal proximity" may be sufficient to show that the protected activity and the adverse action were not "wholly unrelated."  Id. However, where the plaintiff relies on "mere temporal proximity" between

knowledge of protected activity and an adverse action, the timing must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations omitted); *see also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Although a period of as much as one month between the protected expression and the adverse action is not too protracted, a three to four month disparity would be insufficient to show a causal connection. *Higdon*, 393 F.3d at 1220. "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id*.

In response to Pike's motion, Mixon merely reiterates Walden's knowledge of his complaints. He has made no attempt to establish any causal connection between his complaints and his termination four months later. Accordingly, Mixon's complaint of retaliation fails as a matter of law. *Higdon*, 393 F.3d at 1220. Pike's motion for summary judgment will be granted with respect to the retaliation claim.

D.      State Law Claims.

Mixon did not point to any evidence supporting his state law claims or otherwise respond to Defendant's argument that the state law claims are either time-barred or otherwise due to be dismissed.  (Doc.  58.)   Upon review, the motion for summary judgment will be granted as to the state law claims.  Complaint, Counts 3-7.

E.      Mitigation of Damages.

Pike Electric also argues that it is entitled to summary judgment because Mixon failed to mitigate his damages.  While the damages are likely to be minimal due to the offers of re-employment made to Mixon shortly after his termination, the Court cannot say that Mixon will be unable to prove any back-pay damages.

III.   Conclusion.

For the reasons stated herein, Defendant's Motion to Strike (Doc.  66) will be granted as to Plaintiff's Exhibit DD.  The remainder of the Motion to Strike is moot.  Plaintiff's Response to the Motion to Strike (Doc. 67) will be stricken at Plaintiff's request.  Plaintiff's first motion for leave to file a substituted response to the Motion to Strike (Doc. 68) is moot.  Plaintiff's

final motion for leave to file a substituted response to the Motion to Strike (Doc. 69) will be granted and included in the record as Plaintiff's response to the Motion to Strike. Pike Electric's motion for summary judgment (Doc. 40) will be granted as to Mixon's state law claims and the retaliation claim. Mixon does not have a hostile environment claim. The motion for summary judgment will be denied as to Mixon's disparate treatment claim. A separate order will be entered.

Done this <u>10th</u> day of <u>May 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153